IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01374-MSK-MJW

BETTY PEREA,

    Plaintiff,

v.

HUNTER DOUGLAS WINDOW FASHIONS, INC.,

    Defendant.

_____

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND AFFIRMING MAGISTRATE JUDGE'S RECOMMENDATION**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Objections **(# 39)** to the April 16, 2007 Order **(# 35)** of United States Magistrate Judge Michael J. Watanabe denying the Defendant's Motion to Amend its Answer **(# 31)**; the Defendant's Motion for Summary Judgment **(# 43)**, the Plaintiff's response **(# 61)**, and the Defendant's reply **(# 66)**; the Defendant's Unopposed Motion to Seal **(# 50)** a document; and the Plaintiff's Motion to Strike **(# 71)** the Defendant's summary judgment reply brief, and the Defendant's response **(# 72)**.

## **FACTS**

The pertinent undisputed facts are summarized here, and discussed in more detail in the Court's analysis. The Plaintiff was a long-time supervisor in the Defendant's employ, overseeing the manufacture of window coverings. The parties agree that the Defendant generally required that all unused scrap fabric resulting from the manufacturing process be weighed and the weight

recorded at the end of each shift, although, as discussed more fully below, the parties do not agree as to the precise scope or degree of enforcement of this policy.

On April 15, 2005, Concepcion Alvear, one of the Plaintiff's subordinates, reported to Terri Batts-Mahler, the Defendant's Manager of Fabrication, that the Plaintiff had directed another subordinate, Malia Nett, to throw away some scrap fabric without first having weighed it. Batts-Mahler confirmed this allegation with Nett, and then discussed the matter with the Plaintiff. The Plaintiff initially denied having improperly disposed of scrap fabric, but two days later, admitted in a follow-up interview that on April 1, 2005, she had directed Nett to throw some scrap fabric away. The Defendant then terminated the Plaintiff for falsification of work records and improper disposal of scrap fabric.

The Plaintiff commenced this action, alleging **(# 5)** three claims: (i) that her termination constituted national origin discrimination (the Plaintiff is Hispanic), in violation of Title VII, 42 U.S.C. § 2000e-2(a); (ii) that her termination constituted age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; and (iii) that her termination breached contractual rights created by representations in the Defendant's employee handbook. The Plaintiff has now withdrawn the breach of contract claim, and the Court considers only the remaining two discrimination claims.

On October 26, 2006, the Magistrate Judge issued a Scheduling Order **(# 14)** setting November 30, 2006, as the deadline for amendment of pleadings. The Defendant took the Plaintiff's deposition on February 5, 2007, and based on certain statements made by the Plaintiff in that deposition, decided to re-interview Nett. On March 21, 2007, Nett revealed to the Defendant that the Plaintiff routinely directed her to discard scrap fabric without weighing and

recording it. Shortly thereafter, the Defendant moved **(# 31)** to amend its answer to assert an additional affirmative defense: that the Defendant had "after-acquired evidence" that would have independently justified the Plaintiff's termination. *Citing McKennon v. Nashville Banner*, 513 U.S. 352 (1994). The Plaintiff opposed **(# 34)** the Defendant's motion, contending, among other things, that the Defendant had been aware since at least 2005 that Nett had claimed that the Plaintiff repeatedly discarded scrap fabric improperly. Magistrate Judge Watanabe denied **(# 35)** the Defendant's motion, finding that the Defendant "has failed to demonstrate why Ms. Nett could not have been contacted at home well before March 21, 2007." The Defendant filed timely Objections **(# 39)** to that ruling to this Court pursuant to Fed. R. Civ. P. 72(b), arguing, in essence, that good cause existed to grant its motion because it had diligently moved to amend once it discovered the additional evidence, and that the Magistrate Judge erred in instead focusing on the Defendant's failure to speak to Nett earlier. *Citing Pumpco, Inc. v. Schenker Intl., Inc.*, 204 F.R.D. 667, 668-69 (D. Colo. 2001).

The Defendant moves for summary judgment **(# 43)**, arguing that the Plaintiff cannot establish that the Defendant's proffered non-discriminatory reason for her termination – that is, her failure to comply with policies governing the disposal of scrap fabric, is pretextual. In response **(# 61)**, the Plaintiff raises a variety of arguments, including alleged inconsistencies in the application of the policy, inconsistent justifications for her termination given by the Defendant, and the existence of similarly-situated non-Hispanic and younger workers who were treated more beneficially. There are also pending procedural motions relating to the summary judgment motion: the Defendant moves to seal **(# 50)** a copy of the Plaintiff's termination form, and the

3

Plaintiff moves to strike **(# 71)** the Defendant's summary judgment reply for exceeding the Court's page limitations.

## ANALYSIS

### A. Motion to Amend Answer

Turning first to the Defendant's Objections to the Magistrate Judge's denial of its motion to amend its Answer, the Defendant contends that the denial of a motion to amend a pleading to add a claim or defense is a dispositive ruling, and thus, reviewed by this Court *de novo* under Fed. R. Civ. P. 72(b). *Citing McFadden v. Pioneer Natural Resources, USA, Inc.*, 2006 WL 3059967 (D. Colo. 2006). Whether the denial of a motion to amend in these circumstances is a dispositive ruling subject to *de novo* review under Fed. R. Civ. P. 72(b), or a non-dispositive ruling subject to "clearly erroneous or contrary to law" review under Rule 72(a), is a matter that is less than settled. *See generally Sprint Communications Co. v. Vonage Holdings*, 500 F.Supp.2d 1290, 1346 (D. Kan. 2007) ("it is generally accepted that a magistrate judge's order [denying a motion to amend pleadings] is regarded as nondispositive"); *Hall v. Norfolk Southern RR Co.*, 469 F.3d 590, 594-95 (7th Cir. 2006) (treating objections to a denial of a motion to amend complaint on futility grounds as non-dispositive); *Palmer v. Monroe County Sheriff*, 378 F.Supp.2d 284, 288-89 (W.D.N.Y. 2005) (same, collecting cases). Nevertheless, in the absence of a contention by the Plaintiff that a different standard of review is required, the Court will review Magistrate Judge Watanabe's decision under the Defendant's preferred *de novo* standard.

Because the Defendant's Motion to Amend was filed after the deadline in the Scheduling Order for amendment of pleadings, the Court engages in a two-step analysis. First, it examines whether the Defendant has shown "good cause" for seeking modification of the Scheduling

4

Order's deadline under Fed. R. Civ. P. 16(b); if so, the Court proceeds to examine whether leave to amend should be granted under Fed. R. Civ. P. 15(a). *Pumpco,* 204 F.R.D. at 668. Rule 16(b)'s "good cause" standard to modify the Scheduling Order is stricter than Rule 15(a)'s standard governing amendment of pleadings. *Id.* Rule 16(b)'s focus is on the diligence of the movant, and to show "good cause" to amend the Scheduling Order, the movant must show that "scheduling deadlines cannot be met despite a party's diligent efforts." *Id.*

The Defendant interprets *Pumpco*'s "diligence" examination to relate to whether the party diligently moved to amend its pleading once it discovered it had grounds to do so. This might be a plausible interpretation of *Pumpco*, where the court granted relief after simply noting the fact that the movant had recently obtained information through discovery revealing the ground for amendment. However, an interpretation of *Pumpco* focusing primarily on the movant's diligence in moving to extend the deadline, rather than diligence in attempting to perform the task prior to the Scheduling Order's deadline, would be inconsistent with the case upon which *Pumpco* relies. In *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000), the court considered a motion to modify a Scheduling Order's deadline for amendment of pleadings. The *Colorado Visionary* court adopted language from another case characterizing the diligence requirement as "requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Id.* Thus, in assessing whether the Defendant has shown good cause to modify the Scheduling Order here, this Court examines whether the Defendant has shown that it <u>could not</u> have amended its Answer to plead the after-acquired evidence defense within the deadline set by the Scheduling Order.

The Court finds that the Defendant has not done so. As described in the Defendant's motion to amend, the information giving rise to the defense was Nett's statement that the Plaintiff has repeatedly instructed her to dispose of scrap fabric without accounting for it. The Defendant admits that it first interviewed Nett about the issue of the Plaintiff's actions involving scrap fabric in April 2005, prior to the Plaintiff's termination. Although it was not part of the record before the Magistrate Judge – and for that reason alone, the Court could disregard it – the Defendant supports its Objections an affidavit from Batts-Mahler, reciting her recollection of her April 2005 interview with Nett. Batts-Mahler notes that during that interview, "Nett told me that she had seen [the Plaintiff] throw away scrap fabric without weighing and recording it several times." Despite Nett stating that this had occurred "several times," Batts-Mahler apparently responded by asking "if [the Plaintiff] had thrown scrap away earlier in the week," and Nett acknowledged that she had. Batts-Mahler proceeded to ask Nett if the Plaintiff had thrown scrap away in the past, and Nett stated that she had, particularly prior to re-training from management in 2004, that sought to reinforce the Defendant's policies regarding scrap handling. Batts-Mahler states that she interpreted Nett's statement to mean "that [the Plaintiff] was not, at the time of the interview, regularly throwing scrap away without weighing and recording it," but apparently, Batts-Mahler never attempted to confirm that understanding. Instead, she states that "My understanding was that there had been a few recent isolated incidents and my investigation focused on those incidents."

Clearly, there was no impediment to the Defendant ascertaining the full scope of the Plaintiff's alleged misbehavior as early as April 2005. The only reason why the Defendant failed to do so was because Batts-Mahler misinterpreted Nett's answers during her interview, and

6

mistakenly constrained her investigation to inquiring about one specific incident, rather than inquiring further into Nett's indication that the Plaintiff had done so "several times." This is not a situation in which the after-acquired evidence giving rise to the defense is a completely unrelated and previously unknown violation of work rules, as was the employer's discovery of the employee's post-layoff theft of company records in *McKennon*. 513 U.S. at 355. Rather, this is a situation in which the Defendant failed to completely investigate the <u>specific</u> misconduct that led to the Plaintiff's termination, and now seeks relief out-of-time for having finally completed that investigation and discovered that the violation for which the Plaintiff was terminated was more prevalent than initially suspected.

The Court finds that this does not reflect the type of diligence by the Defendant that is necessary to permit modification of the Scheduling Order under Rule 16(b), and thus, upon *de novo* review, adopts the Magistrate Judge's recommendation and denies the Defendant's Motion to Amend.

**B. Motion to Seal**

Before turning to the merits of the Defendant's summary judgment motion, the Court first resolves pending motions relating to the briefing of that motion. First, it considers the Defendant's Motion to Seal one of the exhibits to its summary judgment motion – the Plaintiff's Termination Form. The Motion to Seal does not offer an extended explanation for the relief requested; rather, it simply asserts that "Such exhibit contains confidential information regarding the Plaintiff," and goes on to assert that the public's interest in disclosure of this unspecified information does not outweigh the Plaintiff's interest in confidentiality. *Citing Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

7

As *Nixon* provides, the public enjoys a common-law right of access to judicial records. *Id.* at 597. This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (J. Kane).

There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be sealed. *See Nixon,* 435 U.S at 599. Only in rare cases is the sealing of documents appropriate – for example, cases involving intensely personal issues such as abortion or birth control, or cases pertaining to the welfare of abandoned or illegitimate children. *See Doe v. F.B.I.*, 218 F.R.D. 256, 259 (D. Colo. 2003). Indeed, the strong public interest in access to court records is reflected in this District's Local Rules, which require <u>compelling</u> reasons to seal a document. D.C. Colo. L. Civ. R 7.2. Such a showing is required to ensure public confidence in the judicial process. It is critical that the public be able to review the factual basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814.

In this analysis, the parties' agreement that a particular document is confidential is irrelevant, as is the fact that a document was subject to a protective order during discovery. Documents subject to discovery are not customarily filed with the Court and thus are not available

to the public. As to those documents which are filed with the Court, the parties are not in a position to finally determine whether the public has an interest in them. Documents filed with the Court are presumptively public, and absent a showing of compelling reasons, the Court will not seal them.

Here, the Defendant's conclusory assertion that the termination form contains "confidential" information is insufficient to demonstrate "compelling" reasons for sealing. The Defendant does not identify, generally or otherwise, the particular information that is confidential, nor explain why the Plaintiff's personal interests in maintaining the privacy of that information outweighs the strong public interests described above. In any event, the Court, having reviewed the document, finds nothing therein that would warrant sealing. As best the Court can determine, the only even arguably sensitive data on the form is the Plaintiff's Social Security Number, which the Defendant failed to redact in violation of Fed. R. Civ. P. 5.2(a)(1).[1] The Defendant's failure to observe the established rule requiring redaction of Social Security Numbers does not warrant the sealing of the entire document. Accordingly, the Defendant's Motion to Seal is denied. However, the Court will not direct that the document at Docket # 51 be unsealed; rather, in accordance with Fed. R. Civ. P. 5.2(d), the Court will direct that, within 5 days of the date of this Order, the Defendant file a properly redacted version of the Termination Form for inclusion in the public record.

---

[1]The Court notes that at least one exhibit to the Plaintiff's response to the summary judgment motion also contains the Plaintiff's Social Security Number. *Docket* # 61, Ex. 1 at 2. The Court will direct that this Exhibit 1 to the Plaintiff's response be sealed, and that the Plaintiff file a redacted version of that exhibit within 5 days of the date of this Order.

**C. Plaintiff's Motion to Strike**

The Plaintiff moves to strike the Defendant's reply brief in support of its summary judgment motion, arguing that the brief exceeds the Court's then-existing page limitations. The precise grounds for the Plaintiff's request are unclear – although the Defendant filed both a reply and a supporting brief, each document is within the 10 page limit set by former MSK Practice Standard (Civil) § V.H.3.a.[2] It appears that the Plaintiff actually complains of the Defendant having filed both a reply, containing numerous factual averments, and a brief, containing argument as to both law and fact.

The Court's Practice Standards do not specifically address what content may be included in a reply, nor specifically address whether a party may file both a factual reply and a supporting brief. The Court does observe that, in large part, the Defendant's reply brief merely restates factual arguments that the Defendant has made in its reply, and in that respect, is needlessly cumulative. However, barring some indication that this somehow prejudices the Plaintiff – and none is offered here – the remedy for verbosity is not the striking of the document as a whole,[3] but merely, disregard of the redundant portions. Accordingly, the Plaintiff's Motion to Strike is denied.

---

[2]Since the filing of the Plaintiff's motion, the Court has eliminated all page limits relating to summary judgment motions.

[3]Moreover, the Court is not aware of any rule that contemplates a remedy of "striking" a reply or brief. Fed. R. Civ. P. 12(f), the only Rule of Civil Procedure that mentions "striking," is limited by its terms to "pleadings," and to striking either "an insufficient defense" or "redundant, immaterial, impertinent, or scandalous matter." Even assuming that a reply or brief falls within the definition of a "pleading," Rule 12(f) involves the striking of certain specified, objectionable "matter" within such a pleading, not the wholesale striking of the pleading itself.

### D. Merits of the Summary Judgment Motion

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Where, as here, the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the respondent is obligated to prove. If the respondent comes forward with sufficient competent evidence that, if undisputed, would be sufficient to establish a claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The parties agree that the Plaintiff's national origin and age discrimination claims are governed by the same analysis: the Plaintiff must first establish a *prima facie* case of discrimination, the Defendant must respond with a legitimate non-discriminatory reason for her termination, and the Plaintiff must show the proffered reason to be a pretext for national origin and/or age discrimination. *See generally Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). The parties agree that the Plaintiff can establish a *prima facie* case, and that the Defendant has proffered a legitimate, non-discriminatory reason for the Plaintiff's termination. Thus, the sole question on summary judgment is whether the Plaintiff can adduce sufficient evidence to demonstrate that the Defendant's proffered reason is pretextual.

Pretext can be shown in any one of several ways. The employee may attempt to show that the Defendant's proffered reason is so beset by weakness, inconsistency, implausibility, incoherence, or contradiction that a reasonable factfinder could find it to be false; that the Defendant acted contrary to a written or unwritten company policy applying in the specific circumstances; or that the employer has treated similarly-situated employees outside the protected class more favorably. *Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1225 (10th Cir. 2007); *Kendrick v. Penske Transp. Svcs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Logically, the Court's analytical starting point is the Defendant's proffered reason for the Plaintiff's termination. However, it appears that even this is in some dispute. The Defendant contends that the Plaintiff was terminated "because she falsified production records by improperly discarding and failing to record the weight of certain scrap fabric in violation of [the Defendant's] policies and procedures." *Docket* # 43 at 2. This is essentially consistent with the Termination Form, which states that the Plaintiff was fired for "falsification of company records." The

12

Plaintiff argues that the Defendant's justification for her firing has "mutated" over time. In some senses, this argument is purely semantic. For example, the Plaintiff appears to contend that there is a cognizable difference between an instance of improperly discarding scrap fabric and "falsifying production records." However, the very exhibit that the Plaintiff cites for the proposition that the Plaintiff was cited for discarding scrap, and not for falsifying records, explains how the two concepts equate: in a letter notifying the Plaintiff of her termination, the Defendant states "Due to your recent discarding of fabric scrap, you are in violation of falsifying company production records. Therefore, your employment is being terminated. . . ." *Docket* # 61, Ex. 5.

However, the Plaintiff is correct, at least in part, that the Defendant appears to offer additional justifications for her termination as well. In its motion, the Defendant states that "[i]n the course of the investigation into [the Plaintiff]'s misconduct, [the Defendant] also discovered" the Plaintiff had failed to record certain hours that she worked assisting her subordinates, thereby inflating their production statistics, and that she had failed to help her subordinates "achieve internal certifications." *Docket* # 41 at 3. The Defendant cites to the Plaintiff's Termination Form, which includes a notation in the "Remarks" section that reads "During investigation of this incident it was also uncovered that [the Plaintiff] was not meeting expectations for leadership (see documentation)."[4] The Defendant also cites to Batts-Mahler affidavit, which states "The fact that [the Plaintiff] admitted that she directed Ms. Nett to throw out scrap on one occasion was an important factor in our decision. [The Plaintiff] also admitted that she continued to rewind shades a few times after I instructed her and others to cease rewinding shades because it skewed

---

[4] The is no documentation attached to the Termination Form in the record, nor any other indication as to what the reference to "documentation" refers.

productivity numbers and made it appear that employees were more efficient than they actually had been." *Docket* # 44, Ex. A at 4-5. There is no mention in Batts-Mahler's affidavit of anything regarding "internal certifications," nor any clear indication as to whether the decision to terminate the Plaintiff for "falsifying production records" was intended to relate only to her discarding of scrap fabric, to her failing to report the hours she spent laboring with her subordinates, or both. The April 21, 2006 COBRA letter sent by the Defendant to the Plaintiff mentions only the falsification of production records arising from her discarding of scrap fabric. *Docket* # 61, Ex. 5. At the Plaintiff's Unemployment Hearing in July 2005, Batts-Mahler testified only that the Plaintiff was terminated "for falsely reporting, or not reporting the scrap fabric that she threw away and falsifying production records," *Docket* # 61, Ex. 1 at 10, although, once again, it is not clear as to what the assertion that the Plaintiff "falsif[ied] production records" specifically refers.

Taking the evidence in the light most favorable to the Plaintiff, there is at least some ambiguity as to whether the Plaintiff's termination was based solely upon her improper discarding of scrap fabric – as the April 21, 2005 letter appears to suggest – or whether her involvement in assisting her subordinates with unreported production work is an additional reason for that decision – as the Termination Form and Batts-Mahler's affidavit appear to suggest. This alone constitutes a material dispute of fact that will require a trial.

The Plaintiff contends that the Defendant's initial justification for her discharge – that she had violated company policy by discarding scrap fabric without accounting for it – is pretextual because company policy has been that supervisors were permitted to exercise discretion as to how to dispose of such scrap. To support this assertion, the Plaintiff points to testimony by Fran

14

Mattera, a former supervisor for the Defendant. Mattera, who left the employ of the Defendant in "early 2005," states that "Discarding scrap fabric and not recording it was done for years at the company and was a matter of routine." *Docket* # 61, Ex. 3 at 2. The Defendant appears to concede that, at one point, Mattera's observation may have been accurate, but the Defendant contends that, "about eight months" prior to the Plaintiff's termination in April 2005 – *i.e.* in or about August 2004 – Kris Lettow, the Defendant's Director of Operations, stressed to employees the importance of recording every piece of fabric that was discarded. The Plaintiff herself testified that Lettow "was a real stickler about yields, and they wanted to know every bit of yield that you got rid of." *Docket* # 43, Ex. 5 at 4.

It is somewhat difficult to reconcile Mattera's statement – that discarding scrap fabric was routine – with the Plaintiff's own testimony that Lettow tightened up the Defendant's scrap policies, even though Mattera's departure from employment with the Defendant in early 2005 would necessarily have occurred at some point <u>after</u> Lettow's instruction that all scrap be accounted for. Taking the evidence in the light most favorable to the Plaintiff, and drawing all inferences in her favor, a factfinder could understand Mattera's testimony to demonstrate that, notwithstanding Lettow's instructions, supervisors continued to routinely discard scrap fabric without reporting it into early 2005. Admittedly, to so find, the factfinder would have to disregard the Plaintiff's own testimony that after Lettow's instruction, "nobody threw anything away then" and that "[o]nce Kris Lettow got ahold of it . . . we had to make sure that everything was done." *Docket* # 44, Ex. 2 at 28. Nevertheless, the Court's function is not to weigh the evidence at the summary judgment stage, only to determine whether there is a genuine dispute of

15

material fact. Because the Plaintiff has come forward with evidence that could, arguably, cast doubt upon the Defendant's justification for the Plaintiff's termination, a trial is required.

Finally, the Court notes that the nature of the "admission" that the Defendant contends prompted the Plaintiff's termination is itself disputed. Although the Plaintiff eventually admitted to Batts-Mahler that she instructed Nett to throw some fabric away, the Plaintiff testified in her deposition that she recorded that fabric before doing so. *Docket* # 61, Ex. 4 at 15; *see also Docket* # 44, Ex. 2 at 144 (Plaintiff testified that she included the fabric disposed of by Nett in her end of shift report). The Court has reviewed both the affidavit and deposition testimony of Batts-Mahler, as well as the deposition testimony of Trish Devlin, all of whom were present when the Plaintiff allegedly admitted to disposing of the scrap. However, neither Devlin nor Batts-Mahler contend that the Plaintiff "admitted" that she failed to record the weight of the scrap she gave to Nett to discard. Rather, Batts-Mahler testified only about the Plaintiff disposing of the fabric "outside the system," without explaining how the Plaintiff's alleged recording of the scrap beforehand amounted to a violation of the Defendant's policies. In this sense, the Defendant's reference to an "admission" is not an admission that the Plaintiff disposed of scrap fabric without recording it, but rather, an admission to having recalled an additional incident of disposing of accounted-for fabric that the Plaintiff had neglected to mention in the first meeting. Assuming that the factfinder could conclude that the Plaintiff properly recorded the scrap fabric before giving it to Nett to dispose of, the factfinder could conclude that the Defendant's decision to terminate the Plaintiff on the strength of this "admission" was pretextual.

Having identified a number of factual disputes that require trial, the Court need not consider the remaining issues identified by the parties in their briefing. Accordingly, because the

Court finds that there are genuine disputes as to the material facts in this action, a trial is required. The Defendant's Motion for Summary Judgment is denied.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Objections **(# 39)** are **OVERRULED**, and the Court **ADOPTS** the April 16, 2007 Recommendation **(# 35)** of United States Magistrate Judge Michael J. Watanabe. The Defendant's Motion to Amend its Answer **(# 31)** is **DENIED**. The Defendant's Motion for Summary Judgment **(# 43)** is **DENIED**. The Defendant's Unopposed Motion to Seal **(# 50)** is **GRANTED IN PART**, insofar as the Court finds good cause exists to seal the unredacted version of the Plaintiff's Termination Form (Docket # 43, Ex. 1), and the Clerk of the Court shall **SEAL** that document, and **DENIED IN PART**, insofar as a properly-redacted version of that document does not warrant sealing, and the Defendant shall file a redacted copy of that exhibit on the publicly-available docket within 5 days of the date of this Order. Docket # 51, a duplicate copy of Docket # 43, Ex. 1, shall remain filed under seal. For the reasons stated herein, the Court directs that the Clerk of the Court **SEAL** Docket # 61, Exhibit 1, and that the Plaintiff shall file a redacted version of that exhibit on the publicly-available docket within 5 days of the date of this Order. The Plaintiff's Motion to Strike **(# 71)** the Defendant's summary judgment reply brief is **DENIED**.

Dated this 22d day of February, 2008

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge